UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
JAMES WHITE,

                    Plaintiff,

                                          MEMORANDUM & ORDER
          -against-                       17-CV-4524 (JS)

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.
-------------------------------------X
APPEARANCES
For Plaintiff:     Ronald L. Epstein, Esq.
                   Grey and Grey L.L.P.
                   360 Main Street
                   Farmingdale, NY 11735

For Defendant:     Candace S. Appleton, Esq.
                   United States Attorney's Office
                   Eastern District Of New York
                   271 Cadman Plaza East
                   Brooklyn, NY 11201

SEYBERT, District Judge:

          Plaintiff James White ("Plaintiff") brings this action

pursuant to Section 205(g) of the Social Security Act (the "Act"),

42 U.S.C. § 405(g), challenging the Commissioner of Social

Security's (the "Commissioner") denial of his applications for

disability insurance benefits and Supplemental Security Income

("SSI"). (Compl., Docket Entry 1, ¶ 1.) Presently pending before

the Court are Plaintiff's motion for judgment on the pleadings,

(Pl.'s Mot., Docket Entry 8), and the Commissioner's cross-motion

for judgment on the pleadings, (Comm'r's Mot., Docket Entry 10).

For the following reasons, the Commissioner's motion is DENIED and Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

On March 2 and 9, 2012, Plaintiff applied for disability insurance benefits and SSI, respectively, alleging that since January 24, 2009, he has been disabled based on a traumatic brain injury, speech impairment, chronic fatigue, and chronic pain in his left leg.[2] (R. 127-28, 320-26, 346.) Plaintiff's claims were denied on May 2, 2012, (R. 160-75), and on May 29, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), (R. 176-77). On April 30, 2013, Plaintiff appeared with his attorney for a hearing before ALJ Scott C. Firestone, (R. 77-126), who in a June 21, 2013 decision found that Plaintiff was not disabled, (R. 131-49). Plaintiff filed a request for review of the decision, (R. 317-19), and by order dated November 13, 2014, the Social Security Administration's Appeals Council vacated the

---

[1] The background is derived from the administrative record filed by the Commissioner on November 13, 2017. (R., Docket Entry 6.) "R." denotes the administrative record. For purposes of this Memorandum and Order, familiarity with the administrative record is presumed. The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

[2] Plaintiff testified that he suffered his injuries upon falling into an elevator and striking his head on the elevator's handrail. (R. 53-54.) He was admitted to a hospital, where a CT scan revealed trauma to his brain. (R. 466.)

hearing decision and remanded the case to an ALJ to resolve several issues and conduct another hearing, (R. 150-55).

On August 7, 2015, on remand, Plaintiff and his attorney appeared for a hearing before ALJ Alan B. Berkowitz, (R. 38-76), who issued a decision on March 24, 2016, (R. 18-30). ALJ Berkowitz found that Plaintiff was not disabled, (R. 30), and this decision became the Commissioner's final decision on June 12, 2017, when the Appeals Council denied Plaintiff's request for a review, (R. 1-6).

Plaintiff filed this action on August 2, 2017, (Compl.), and moved for judgment on the pleadings on February 12, 2018, (Pl.'s Br., Docket Entry 8-1). The Commissioner cross-moved for judgment on the pleadings on April 12, 2018, (Comm'r's Br., Docket Entry 11), and Plaintiff opposed the Commissioner's motion on May 4, 2018, (Pl.'s Opp., Docket Entry 13).

DISCUSSION

I.   Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether the plaintiff is entitled to disability benefits. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). Instead, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are

based on an erroneous legal standard." Persico v. Barnhart, 420 F. Supp. 2d 62, 70 (E.D.N.Y. 2006) (internal quotations marks and citation omitted). If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

"Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id. The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See id. To determine if substantial evidence exists to support the ALJ's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted).

II. Determination of Disability

A claimant must be disabled within the meaning of the Act to receive disability benefits. See Boryk ex. rel Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *7 (E.D.N.Y. Sept. 17, 2003). A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for

4

a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining whether a claimant is disabled as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Second, the Commissioner considers whether the claimant suffers from a "severe medically determinable physical or mental impairment" or a severe combination of impairments that satisfy the duration requirement set forth at 20 C.F.R. § 404.1509. Third, if the impairment is "severe," the Commissioner must consider whether the impairment meets or equals any of the impairments listed in Appendix 1 of the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the impairment or its equivalent is not listed in the Appendix, the claimant must show that he does not have the residual functional capacity ("RFC") to perform tasks required in his previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth, if the claimant does not have the RFC to perform tasks in his previous employment, the Commissioner must determine if there is any other

work within the national economy that the claimant is able to perform, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled and entitled to benefits.

The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step. Boryk, 2003 WL 22170596, at *7 (citing Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000)). "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Id. at *8.

III.  The ALJ's Decision

The ALJ applied the five-step analysis described above and determined that Plaintiff is not disabled. (R. 21-30.)

At step one, the ALJ found that while Plaintiff had worked during the relevant period, he had not engaged in substantial gainful activity since January 24, 2009, the alleged disability-onset date. (R. 23.)

At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: "status-post traumatic

brain injury with resultant cognitive disorder and cervical and lumbar sprains and a history of alcohol abuse." (R. 24.)

At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of one of the impairments listed in Appendix 1 of the Social Security regulations. (R. 24-25.) The ALJ then found that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb stairs and ladders, occasionally balance, stoop, kneel, crouch and crawl and occasionally withstand exposure to extreme humidity and extreme temperatures. In addition, he is limited to performing simple tasks with simple instructions and can occasionally interact with co-workers and the general public.

(R. 25.)

At step four, the ALJ concluded that Plaintiff could not perform his past relevant work. (R. 29.)

At step five, based on his RFC, age, education, and work experience, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (R. 29.) As a result, the ALJ determined that Plaintiff is not disabled. (R. 30.)

IV. The Treating Physician Rule and Analysis of the ALJ's Decision

Plaintiff argues that the administrative record is fully developed and substantial evidence supports his entitlement to benefits, and that as a result, the Court should remand the case

solely for the calculation and payment of benefits, or in the alternative, for further proceedings. (Pl.'s Br. at 3.) Generally, Plaintiff contends that the ALJ did not properly evaluate whether Plaintiff's headaches and migraines--either alone or in combination with his other impairments--affected his ability to work. (Pl.'s Br. at 18.) More specifically, Plaintiff contends that (1) the ALJ improperly failed to follow the treating physician rule with respect to the opinions of his treating physician, Dr. Fawzy W. Salama,[3] concerning Plaintiff's headaches and migraines, (Pl.'s Br. at 18-22); and (2) the ALJ improperly rejected Plaintiff's complaints of pain and the extent of his impairments, (Pl.'s Br. at 23-24).

The Commissioner contends that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied, and urges the Court to affirm the Commissioner's decision. (Comm'r's Br. at 1.) Responding to Plaintiff's arguments, the Commissioner maintains that the ALJ assigned proper weight to the opinions of Dr. Salama, (Comm'r's

---

[3] Plaintiff purports to challenge the weight given to one opinion of Dr. Salama and one opinion of Dr. Zuckerman (at times, Plaintiff incorrectly refers to Dr. Zuckerman as "Dr. Zimmerman"). (See, e.g., Pl.'s Br. at 19.) However, both opinions are actually those of Dr. Salama--the ALJ mistakenly attributed one of Dr. Salama's opinions to Dr. Zuckerman. (R. 27 (referring to May 7, 2013 visit with Dr. Zuckerman and citing Exhibit 19F), R. 833-34 (Exhibit 19F, a May 7, 2013 letter from Dr. Salama concerning Plaintiff).)

Br. at 19-25), and Dr. Zuckerman, (Comm'r's Br. at 25-28), and that the ALJ properly considered Plaintiff's alleged symptoms and functional limitations, (Comm'r's Br. at 28-29).

The "treating physician rule" provides that the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Specifically, the regulations state:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).[4] Nevertheless, the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record." Molina v. Colvin, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (internal quotation marks and citation omitted).

---

[4] "While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." Williams v. Colvin, No. 16-CV-2293, 2017 WL 3701480, at *1 (E.D.N.Y. Aug. 25, 2017); see also 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

When an ALJ does not afford controlling weight to the opinion of a treating physician, he must consider factors that include: "(1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). The ALJ must also set forth "'good reasons' for not crediting the opinion of a plaintiff's treating physician." Id. "As a general matter, '[f]ailure to properly apply the treating physician's rule, or consider the required factors, constitutes legal error and is a sufficient basis for remand.'" Cora v. Colvin, No. 15-CV-1549, 2016 WL 4581343, at *3 (S.D.N.Y. Sept. 1, 2016) (quoting Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 506 (S.D.N.Y. 2014) (citation omitted) (alteration in original).

A. Dr. Salama

Plaintiff argues that the ALJ improperly failed to assign controlling weight to two opinions of his treating neurologist, Dr. Salama. (Pl.'s Br. at 18-22.) Plaintiff first saw Dr. Salama on May 2, 2012. (R. 764-66.) Dr. Salama noted that Plaintiff reported experiencing migraine headaches four times per week, and that he takes Motrin for relief. (R. 765.) He

diagnosed Plaintiff with concussion, cerebral contusion, traumatic brain injury, and migraine headache. (R. 766.) He prescribed Plaintiff sumatriptan succinate for migraine relief. (R. 766.)

Plaintiff returned to Dr. Salama on February 14, 2013. (R. 1084-86.) Dr. Salama noted that Plaintiff complained of loss of memory, frequent migraines, slurred speech, movement restrictions, and dizziness. (R. 1084.) He noted that Plaintiff gets migraine headaches four times per week and takes Motrin for the pain. (R. 1085.) He diagnosed Plaintiff with the same disorders from his May 2, 2012 visit, with the addition of "[l]ocalized primary osteoarthritis of the ankle." (R. 1085.)

Plaintiff saw Dr. Salama again on March 21 and May 7, 2013. (R. 1087-91, 1097-1103.) He noted Plaintiff's health conditions and migraine headaches, (R. 1089-90, 1101-02), and during the May 7 visit, added the diagnosis "[m]igraine headache with intractable migraine." (R. 1102.)

The first Dr. Salama opinion at issue is a "Headaches Disability Questionnaire" that Dr. Salama prepared the same day as Plaintiff's February 14, 2013 visit. (R. 27, 802-07.) According to the Headaches Disability Questionnaire, Plaintiff experiences mild to moderate headaches on a daily basis, as well as severe and throbbing headaches three times per week. (See R. 802-03 (noting "severe migraine severity headache with mild and moderate headache daily," and describing their frequency as both "daily" and "3

11

[times] weekly").)  The headaches are noted to be accompanied by visual disturbances, photosensitivity, mental confusion, and an inability to concentrate.  (R. 803.)  Dr. Salama provides that Plaintiff's severe headaches last forty-eight to seventy-two hours, and that Plaintiff should sit still, take medication, and, if possible, sleep for two hours when suffering from headaches. (R. 803-04.)  Dr. Salama opines that the headaches would "[c]onstantly" interfere with his attention, and that Plaintiff is incapable of even "low stress" work.  (R. 805-06.)  Additionally, he opines that Plaintiff would be precluded from performing basic work tasks while experiencing headaches and that he would be absent from work more than three times per month as a result of his headaches.  (R. 805-06.)  The ALJ assigned this opinion "little weight" because he found it to be inconsistent with the opinions of other treating and examining doctors.  (R. 27.)

Dr. Salama prepared the second opinion at issue--a May 7, 2013 letter--in connection with Plaintiff's May 7, 2013 visit.  (R. 27, 1097-1103.)  The letter provides that Plaintiff "suffered a closed head injury with," among other things, "migraine headache [and] chronic tension type headache . . . as of 1/24/2009 with residual complaints of cognitive dysfunction and chronic daily headache and anxiety disorder."  (R. 1097.)  Dr. Salama opines that Plaintiff "is totally temporarily disabled because of the above medical problems."  (R. 1097.)  The ALJ afforded this

opinion "little weight" because he found it to be inconsistent with Dr. Zuckerman's prior opinions and the opinions of other treating and examining doctors, and noted that "the determination of disability is reserved for the Commissioner."  (R. 27.)

B.   Drs. Herman, Pollack, Zuckerman, and Burstein

In contrast to the "little weight" afforded to Dr. Salama's opinions, the ALJ gave "great" or "some" weight to the opinions of other doctors.  For instance, On July 7, 2011, psychologist Paul Herman, Ph.D., conducted a consultative examination of Plaintiff.  (R. 716-20.)  He noted that Plaintiff had tried to return to work "but was unable to be as sharp as he was in the past, reporting that his medical issues interfered because he would have to be hands-on and walking around, and he would have dizziness, difficulty with stiff joints and migraines." (R. 716.)  Dr. Herman also observed that Plaintiff has "hypertension, migraines[,] and joint problems" and "is prescribed ibuprofen unknown dose twice daily."  (R. 716.)  Dr. Herman found that Plaintiff's attention and concentration were "[s]trikingly problematic, so much so that it raises a concern about malingering because [he] was unable to perform serial 3s" and other simple tasks, which "was inconsistent with his overall presentation, his social interaction . . . , and [ ] with his having driven himself to the evaluation."  (R. 717-18.)  Dr. Herman evaluated Plaintiff's

memory skills to be "strikingly poor."  (R. 718.)  Nonetheless,

Dr. Herman opined that:

> From a psychiatric/psychological perspective,
> [Plaintiff] appears capable of the following
> vocational functions:    Following and
> understanding   simple   directions   and
> instructions, performing simple tasks with
> supervision, relating adequately with others,
> and appropriately dealing with stress.  He may
> have some difficulty maintaining attention and
> concentration,    maintaining    a    regular
> schedule,  learning  new  tasks,  performing
> complex    tasks    and    making    appropriate
> decisions.   This is based on aspects of the
> mental   status   exam   which   as   stated   before,
> raises a concern of malingering.

(R. 718.)  The ALJ gave this opinion "great weight as it is based

on  a  thorough  psychological  evaluation  of  [Plaintiff]  and  is

consistent with treating records."  (R. 28.)

Plaintiff  saw  Dr.  Herman  again  on  August  24,  2011  for

cognitive  testing  and  an  evaluation.   (R.  722-25.)   Dr.  Herman

found  various  aspects  of  Plaintiff's  behavior  to  be  normal  and

appropriate.   (R.  722-23.)   He  noted  Plaintiff's  attention  and

concentration  to  be  "good."   (R.  723.)   Based  on  Dr.  Herman's

testing  of  Plaintiff,  he  evaluated  Plaintiff  to  be  "in  the

borderline range of cognitive ability."  (R. 723-24.)  Dr. Herman

gave the following opinion:

> From  a  cognitive  perspective,  [Plaintiff]
> appears  capable  of  the  following  vocational
> functions: Following and understanding simple
> directions   and   instructions;   performing
> simple  tasks;  maintaining  attention  and
> concentration  at  a  level  sufficient  for  low-

level employment; maintaining a regular
schedule; learning new tasks; making
appropriate, simple, work-related decisions;
relating adequately with others; and
appropriately dealing with stress. He may
have some difficulty performing complex tasks.

The results of the examination appear to
be consistent with cognitive decline related
to an accident, but, in and of itself, this
does not appear to be significant enough to
interfere with [Plaintiff's] ability to
function on a daily basis to the extent that
all vocational functioning would be precluded.

(R. 724-25.) The ALJ gave Dr. Herman's opinion "great weight as
it is based on a thorough evaluation of [Plaintiff] and is
consistent with treating records." (R. 28.)

Plaintiff was also consultatively examined by Andrea
Pollack, D.O., a family practitioner, on June 9, 2011. (R. 712-
15.) Dr. Pollack discussed Plaintiff's conditions, including
memory loss, neck pain, and radiating back pain. (R. 712.) With
regard to his headaches, she noted:

[H]e gets migraines every other day, which are
brought on by weather changes as well. They
last for 30 minutes. They are left-sided,
sharp, and throbbing. No nausea or vomiting.
He does get blurry vision with them. No
sensitivity to light. He does get sensitivity
to sound. He followed with neurology in the
past. He does not keep a headache journal.
He is on medications, over-the-counter, with
relief.

(R. 712.) She diagnosed him with "[s]tatus post traumatic brain
injury," "[m]igraine headaches," "[s]hort-term memory loss,"

"[n]eck pain," and "[l]ower back pain, with radiation." (R. 714-15.) Dr. Pollack opined that:

> He should avoid heights, operating heavy machinery, or activities which require heavy exertion. He has a moderate restriction in pushing, pulling, bending, lifting, and carrying. He has mild restriction in walking, climbing stairs, standing, and sitting. He's restricted in activities which require fine manipulation with hands secondary to decreased sensation.

(R. 715.) The ALJ gave this opinion "some weight as it is based on a thorough physical examination of" Plaintiff. (R. 27.)

Plaintiff saw Dr. Pollack again on April 9, 2012, and she noted, among other issues, problems with his short-term memory, speech, cognitive performance, concentration, and speech. (R. 727.) Dr. Pollack also observed that "[h]e gets headaches four times a week, temporal in location, throbbing in nature. He gets sensitive to sound and dizziness with them. He is not seeing a neurologist. He states it impaired his vision as well." (R. 727.) She diagnosed him with eight conditions, including headaches, and opined that "he has mild restriction in speech" and moderate restrictions with respect to several physical activities, that he should avoid activities that "require heavy exertion[ ] or activities which may put him at risk for fall[ing]," and that he has evidence of memory impairment. (R. 729.) Dr. Pollack also opined that "[h]e is restricted in activities which require fine visual acuity bilaterally and should have a cognitive evaluation."

(R. 729.)  The ALJ gave this opinion "some weight as it is based on a thorough physical examination of" Plaintiff.  (R. 28.)

On December 28, 2009, Plaintiff saw neurologist Mark J. Zuckerman, M.D., who noted that among other things, Plaintiff "has headaches two to three times a week with sudden left-sided pain, last[ing] 5 to 10 minutes, they are pretty intense and then he takes aspirin and they seem to get better." (R. 707.)  He opined that Plaintiff "cannot return to employment requiring multitasking, cognitive processing, and interaction on a repetitive basis with client[s]." (R. 709.)  Plaintiff consulted with Dr. Zuckerman again on February 3, 2010, and Dr. Zuckerman noted that Plaintiff experienced difficulties with concentration, memory, focus, speaking, and pain, and "continues to have headaches lasting for five minutes or so, very intense, explosive throbbing left temple, comes several times a week." (R. 705.)  He opined that Plaintiff is "unable to return to his prior employment at this time." (R. 706.)  Similarly, after Plaintiff's April 21, 2010 visit, Dr. Zuckerman noted that Plaintiff was "about the same," with cognitive impairment and headaches, among other symptoms, and opined that "[t]here is some residual impairment limiting him cognitively to return to his prior employment." (R. 703-04.)  Finally, following a June 9, 2010 visit, Dr. Zuckerman noted that Plaintiff "has not changed much" and opined that "[h]e cannot return to work at this time." (R. 701-02.)  The

ALJ gave these opinions "some weight" as "consistent with the evidence as a whole," and found that the opinions "pertain[ ] to [Plaintiff's] past relevant work but do[ ] not preclude all work that exists in the national economy." (R. 26-27.)

Further, medical analyst Dr. Y. Burstein, a psychologist, (R. 28), reviewed the evidence on May 2, 2012, (R. 730-46), and found that Plaintiff had a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and one or two repeated episodes of deterioration, (R. 740). He opined that Plaintiff "is capable of understanding and following simple directions and sustaining concentration for simple tasks," and that he "is able to adapt to simple changes as well as relate adequately to others." (R. 746.) The ALJ gave this opinion "great weight as it is considered non-examining medical expert opinion evidence." (R. 28.)

C. Analysis

As discussed, Plaintiff contends that the ALJ failed to properly apply the treating physician rule in assigning Dr. Salama's opinions "little weight," and that even if he properly discounted Dr. Salama's opinions, he failed to evaluate the extent to which Plaintiff's headaches and migraines would affect his ability to work. (Pl.'s Br. at 18-22.) The Court agrees and finds

that the ALJ failed to properly apply the treating physician rule with respect to Dr. Salama's Headaches Disability Questionnaire. The ALJ gave "little weight" to Dr. Salama's opinion that Plaintiff "is incapable of even low stress work and would be absent more than three times a month" because "it is inconsistent with the opinions of other treating and examining doctors." (R. 27.) However, the opinions of other treating and consultative physicians do not contradict important aspects of Dr. Salama's opinion.

Specifically, the record is replete with Plaintiff's complaints and doctors' diagnoses of his headaches and migraines, and Dr. Salama found that (1) Plaintiff would be unable to concentrate while experiencing them and that (2) they would cause him to miss work more than three times per month.[5] (R. 805-06.) Strangely, however, the ALJ mentions Plaintiff's headaches and migraines only in passing, when summarizing physicians' diagnoses of them. (See R. 24-29.) While the ALJ is entitled to give little weight to a treating physician's opinions, he must give "good reasons" for doing so. See Schnetzler, 533 F. Supp. 2d at 286. His explanation here--that Dr. Salama's opinions are contradicted by other physicians' opinions--is insufficient. (R. 27.)

---

[5] These opinions accord with Plaintiff's testimony that his headaches "last for a couple of hours" and that he "sit[s] down in a dark room" while experiencing them. (R. 110-11.)

First, with respect to concentration, while Dr. Herman remarked that Plaintiff's attention and concentration are generally "good," (R. 723), and Plaintiff testified that he "can concentrate on a simple thing," (R. 115), that says nothing of his ability to concentrate while experiencing a headache or migraine. Further, Dr. Herman's opinions on Plaintiff's ability to work were strictly from a "psychiatric/psychological" or "cognitive perspective." (R. 718, 724-25.) Similarly, Dr. Burstein's assessment focuses on cognitive and psychological limitations, (R. 730-46), and Dr. Zuckerman's opinions and notes focus on Plaintiff's cognitive abilities, (R. 701-09), rather than the effects of Plaintiff's headaches on his ability to concentrate. Moreover, while Dr. Zuckerman's first three opinions implied that Plaintiff may be able to work in some capacity, (R. 704, 706, 709), his final opinion--that Plaintiff "cannot return to work at this time"--is ambiguous as to whether he believed Plaintiff incapable of performing any work or incapable of returning to his prior job, (R. 702). In addition, to the extent Dr. Pollack's silence on the impact of Plaintiff's headaches can be read as an opinion that they do not affect his ability to work, the conflicting opinion of Dr. Pollack, a consulting physician with a family practice, (R. 727-29), is entitled to less weight than that of Dr. Salama, a treating physician specializing in neurology. See Cora, 2016 WL 4581343, at *5 (quoting Sanders v. Comm'r of Soc. Sec., 506 F.

App'x 74, 78 n.4 (2d Cir. 2012)); see also id. at *4-5 (compiling cases and noting that "courts in this Circuit have found it inappropriate for ALJs to infer unspoken functional assessments from similar physical exams conducted by consulting physicians, unless those exams provided particularly relevant findings").

Second, with respect to Plaintiff's expected absenteeism, the Commissioner does not cite any evidence regarding other doctors' opinions on whether and how often they would expect Plaintiff to miss work as a result of his headaches and migraines. Thus, Dr. Salama's opinion that they would cause Plaintiff to miss work more than three times a month is not contradicted by the opinions of other doctors. (R. 806.)

The absence of evidence rebutting Dr. Salama's report regarding Plaintiff's expected absenteeism and lapses in concentration is critical because the vocational expert in this case, Christina Boardman, testified that a person in Plaintiff's position would be unable to competitively find work if he were to miss two days of work per month or if he were "off task"--not concentrating on work--fifteen percent of the time.[6] (R. 72-75.)

---

[6] Ms. Boardman also responded to a vocational questionnaire dated November 24, 2015, (R. 446-50), which provided that a hypothetical person with Plaintiff's attributes could perform work that exists in the national economy (R. 447-50). However, there is no answer to the further hypothetical of whether the same would be true if the claimant "was on task only 80 percent of the workday." (R. 447.)

Accordingly, the opinions of other treating and examining doctors are not substantial evidence contrary to Dr. Salama's opinions on the effects of Plaintiff's headaches and migraines, and they do not justify the ALJ's decision not to give Dr. Salama's opinions controlling weight.[7]

## CONCLUSION

For the foregoing reasons, the Commissioner's motion (Docket Entry 10) is DENIED and Plaintiff's motion (Docket Entry 8) is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's request for remand solely for the calculation of benefits is DENIED and his alternative request for remand for further proceedings is GRANTED. On remand, the ALJ must reconsider his decision not to give Dr. Salama's opinion on Plaintiff's headaches and migraines controlling weight. If he still believes that controlling weight is not appropriate, he must thoroughly consider the factors set forth in 20 C.F.R. 404.1527(c) and "articulate more specific and substantial considerations that support this decision." See Cora, 2016 WL 4581343, at *8 (internal quotation marks omitted).

---

[7] In light of this conclusion, the Court does not reach Plaintiff's other arguments, including that the ALJ improperly rejected Plaintiff's credibility with respect to his complaints of pain and the extent of his impairments. (Pl.'s Br. at 23-24.)

The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September __30__, 2018
      Central Islip, New York